**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

**MINDA LYNCH** :

**Plaintiff** :

**v.** :

**METROPOLITAN LIFE INSURANCE CO.** :

**And** : **CA #8:16-cv-03567-TDC**

**MAKELL PAULK** :

**And** :

**TEDRIC PAULK, Individually, and as**
**Executor of the Estate of Younzetta Paulk:**

**Defendants** :

***DEFENDANTS MAKELL PAULK AND TEDRIC PAULK, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF YOUNZETTA PAULK:***

**ANSWER TO CROSSCLAIM OF INTERPLEADER OF METROPOLITAN LIFE INSURANCE COMPANY**

**ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT OF PLAINTIFF MINDA R. LYNCH**

**AND**

**COUNTERCLAIM AGAINST PLAINTIFF MINDA R. LYNCH**

COMES NOW THE DEFENDANTS (the Defendants or the Paulks), by and through their undersigned counsel, and hereby file the above pleadings in response to the filings of Metropolitan Life Insurance Company (“MetLife”) and Minda R. Lynch (“Lynch”).

FIRST, Defendants Paulks file an **ANSWER TO CROSSCLAIM OF INTERPLEADER OF METROPOLITAN LIFE INSURANCE COMPANY**, as follows:

1. The allegations stated in Paragraph 1 are admitted upon information and belief.
2. The allegations stated in Paragraph 2 are admitted.
3. The defendants admit the allegations stated in Paragraph 3 that Makell Paulk is the daughter of Younzetta Paulk but states that said Defendant is a citizen and resident of Falls Church, Virginia.
4. The Defendants admit the allegations stated in Paragraph 4 that Defendant Tedric Paulk is the son of Younzetta Paulk and admits that he is a citizen and resident of Virginia Beach, Virginia.
5. The allegations stated in Paragraph 5 contain conclusions of law and therefore no admission or denial is required. However, the Defendants admit that this Court has jurisdiction over this action.
6. The allegations stated in Paragraph 6 contain conclusions of law and therefore no admission or denial is required. However, the Defendants admit that venue is proper.
7. Admitted that the Decedent Younzetta Paulk was a participant in the Military Benefit Association Group Term Life Insurance Program ("the Plan").
8. Admitted that the the Plan's Certificate establishes, at page 51, the right of a Plan participant to name his or her beneficiary and that a true and correct copy of the Certificate was attached as Exhibit A.
9. The Defendants are without sufficient information to admit or deny the

statements made in Paragraph 10 and denies the same.

10. Admitted that Defendants Tedric Paulk and Makell Paulk are designated, equal and primary beneficiaries of Younzetta Paulk's MetLife insurance policy with each receiving fifty percent (50%) of the life insurance benefits at issue, that the designation was made by the decedent on September 14, 2013, and that Exhibit C appears to be a copy.
11. Admitted that the Decedent died on June 16, 2016, and that Exhibit D appears to be a true and correct copy of her death certificate.
12. Admitted that at the time of her death, the decedent was enrolled in a MetLife insurance plan with life insurance coverage in the amount of $100,000.
13. Admitted that on or about June 30, 2016, MetLife received a Life Insurance Claim Form from Ms. Lynch for the Plan Benefits, and a document that appears to be a true and correct copy of Ms. Lynch's claim form is attached hereto as Exhibit E.
14. The allegations stated in Paragraph 14 are admitted.
15. The allegations stated in Paragraph 15 are admitted.
16. The allegations stated in Paragraph 16 are admitted.
17. The allegations stated in Paragraph 17 are admitted.
18. The allegations stated in Paragraph 18 are admitted.
19. The allegations stated in Paragraph 19 are admitted.
20. The allegations stated in Paragraph 20 are admitted.
21. The allegations stated in Paragraph 21 are admitted.
22. The allegations stated in Paragraph 22 are admitted.

23. The allegations stated in Paragraph 23 are admitted.

24. The Defendants are without sufficient information to admit or deny and therefore denies the allegations stated in Paragraph 24.

25. The allegations stated in Paragraph 25 are admitted.

26. The Defendants are without sufficient information to admit or deny and therefore denies the allegations stated in Paragraph 26.

26. (sic) Upon information and belief, the allegations stated in Paragraph 26 are admitted, but the Paulks deny that MetLife has an "interest" in the litigation in recovering its attorney's fees and costs.

27. The Paulks are without sufficient information to admit or deny and therefore deny the allegations stated in Paragraph 27, although they admit that the Plan Benefits, along with all accrued interest, should be paid by MetLife into the Registry of this Court or, alternatively, to the Paulks.

28. The Paulks are without sufficient information to admit or deny and therefore deny the allegations stated in Paragraph 27, although they admit that the Plan Benefits, along with all accrued interest, should be paid by MetLife into the Registry of this Court or, alternatively, to the Paulks.

WHEREFORE, the Paulks ask that this Court order MetLife to pay the Plan Benefits, along with all accrued interest, to the Paulks. Alternatively, if the Court should not agree with this remedy, the Paulks ask that this Court, on an interim basis, order the Plan Benefits to be paid into the Registry of this Court pending the resolution of this action. In any event, the Paulks also ask this Court for payment of its attorney's fees and costs by the Defendants, deny the payment of any attorney fees or costs to the other parties, and deny any further relief.

******************

SECOND, Defendants Paulks file an **ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT OF PLAINTIFF MINDA R. LYNCH,** as follows:

1. Paragraph 1 contains a legal conclusion to which no response is required. To the extent a response is required, denied.
2. Paragraph 2 contains a legal conclusion to which no response is required. To the extent a response is required, denied.
3. Admitted that Plaintiff Minda R. Lynch was married to Younzetta Paulk (the "Decedent") from October 4, 2015 to the death of Ms. Paulk on June 16, 2016. Admitted upon information and belief that Ms. Lynch is a resident of Montgomery County, Maryland.
4. Admitted that Younzetta Paulk was married to Ms. Lynch from October 4, 2015 to the death of Ms. Paulk on June 16, 2016. Admitted that Ms. Paulk died on June 16, 2016 in Montgomery County, Maryland.
5. Denied that Younzetta Paulk executed a legal Beneficiary Designation in favor of Ms. Lynch.
6. Admitted that at the time of her death Younzetta Paulk was insured by a MetLife insurance policy which is the subject of this litigation.
7. Admitted upon information and belief.
8. Admitted.
9. Admitted with the caveat that Makell Paulk is now a resident of Falls Church, Virginia.
10. Denied that Younzetta Paulk willingly and voluntarily executed a Beneficiary

Designation in favor of Ms. Lynch at any time. Upon information and belief, the Paulks admit that a form that purports to be a "Beneficiary Designation" dated May 19, 2016 that appears to designate Ms. Lynch as the sole beneficiary of the life insurance benefits and with what appears to be Younzetta Paulk's signature was sent to MetLife. The Paulks, upon information and belief, admit that a copy of what purports to be that form is attached to the complaint as Exhibit A. The Paulks deny all remaining allegations in paragraph 10 of the complaint.

11. Denied that Younzetta Paulk willingly and voluntarily executed a Beneficiary Designation in favor of Ms. Lynch at any time. Admitted, upon information and belief, that a form that purports to be a "Beneficiary Designation" was filed with MetLife. The Paulks deny all remaining allegations in paragraph 11 of the complaint.
12. Admitted that Younzetta Paulk died on June 16, 2016. Admitted that sometime thereafter, Ms. Lynch submitted a document alleging entitlement to Younzetta Paulk's insurance proceeds, and demanded payment. The Paulks deny all remaining allegations in paragraph 12 of the complaint.
13. Admitted, upon information and belief, that MetLife did not pay any insurance "proceeds" to Ms. Lynch. With respect to the referenced MetLife letter dated August 12, 2016, the Paulks state that such letter speaks for itself, and what appears to be a copy is attached as Exhibit B. What appears to be Younzetta Paulk's Beneficiary Designation naming her children the Paulks as her beneficiaries of the MetLife policy, with Social Security numbers and other important information redacted, is attached as Exhibit

C. The Paulks deny all remaining allegations in paragraph 13 of the complaint.

14. Admitted that the letter attached to the complaint as Exhibit B speaks for itself. The Paulks deny all remaining allegations in paragraph 14 of the complaint.
15. Paragraph 15 contains conclusions arrived at by Ms. Lynch to which no response is required. To the extent a response is required, the allegations of paragraph 15 are denied. The Paulks deny all remaining allegations in paragraph 15 of the complaint.
16. Admitted.
17. Admitted that MetLife stated that it considered an interpleader action and, at the time of this writing, in fact has filed an interpleader action.
18. Paragraph 18 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 18 are denied.
19. Paragraph 19 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 19 are denied.
20. Paragraph 20 contains legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 20 are denied.
21. Denied. This paragraph also contains legal conclusions to which no response is required. To the extent a response is required, the allegations of paragraph 21 are denied.

22. Denied. This paragraph also contains legal conclusions to which no response is required. To the extent a response is required, the allegations of paragraph 22 are denied.

WHEREFORE, the Paulks ask this Court to deny the relief requested by Ms. Lynch in the entirety, grant the Paulks attorney's fees and costs for having to defend this matter, and provide any additional relief to the Paulks that this Court deems just and fair.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff Ms. Lynch has failed to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Ms. Lynch has failed to state a claim upon which attorneys' fees can be awarded.

**THIRD AFFIRMATIVE DEFENSE**

All actions with respect to the matters alleged to be taken in Plaintiff's complaint by the Paulks, if any such actions were taken, were at all times done in good faith and for appropriate and legally permissible reasons.

**FOURTH AFFIRMATIVE DEFENSE**

Ms. Lynch's claims are barred by the fact that any decisions made by MetLife or the Paulks, or by others on behalf of MetLife or the Paulks, were reasonable in light of the administrative record before MetLife, and were reasonably based on the facts as determined and understood by MetLife.

**FIFTH AFFIRMATIVE DEFENSE**

The Paulks allege that Ms. Lynch's alleged damages, if any, were

proximately caused by the negligent, reckless or intentional acts or omissions of other parties that the Paulks did not have the legal right, duty or opportunity to control, and who acted without the Paulks' complete knowledge, participation, approval or ratification.

**SIXTH AFFIRMATIVE DEFENSE**

The Paulks allege that Ms. Lynch's complaint does not describe the claims made against the Paulks with sufficient particularity to enable them to determine what additional defenses they may have in response to the purported claims. The Paulks reserve the right to add other and further defenses as the bases for Ms. Lynch's purported claims become known.

******************

THIRD, Defendants Paulks file a **COUNTERCLAIM AGAINST PLAINTIFF MINDA R. LYNCH**, as follows:

**THE PARTIES**

1. Defendants Makell and Tedric Paulk (the Paulks), as noted herein, are the adult children of the decedent Younzetta Paulk, and are residents of the state of Virginia.

2. Tedric Paulk is Executor of the estate of his mother Younzetta Paulk, whose administration is before the Register of Wills in the State of Maryland, Estate No. W88195.

3. Plaintiff Ms. Lynch was the spouse of the decedent, and at the time of these events lived in Montgomery County, Maryland.

4. MetLife, as noted herein above more extensively, is a corporation and does business in the state of Maryland.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship); and 28 U.S.C. §1335, as per the interpleader action filed by MetLife.

6. Venue is proper pursuant to 28 U.S.C. § 1397 (Interpleader), and 28 U.S.C. § 1391(b)(2), because the Decedent and Ms. Lynch resided in this district during the period in question, and a substantial part of the events giving rise to this action occurred in this district.

## GENERAL RECITALS

7. On September 14, 2013, Ms. Younzetta Paulk executed a Beneficiary Designation of life insurance in favor of her 2 adult children Makell and Tedric through her MetLife Group Life Insurance Policy. In paragraph 6 of MetLife's responsive pleading to Plaintiff's complaint, MetLife states and Defendants adopt that MetLife "was the insurer for life insurance benefits for the Decedent under Group Life Policy No. 149107-1-G." The pertinent group of which Ms. Paulk was a member was the Military Benefit Association. **Exhibit A.**

8. Younzetta Paulk completed the entire one-page application in her own handwriting, and told her adult children Makell and Tedric that she had done this for them so that they would have ample resources after her death.

9. On July 31, 2015, Ms. Paulk told Ms. Lynch in an email that "Except from my kids [Tedric and Makell], no one has claim to anything of mine. They're [Tedric and Makell] already named as beneficiaries."

10. On August 3, 2015, Younzetta Paulk was diagnosed with terminal stage 4 pancreatic cancer.

11. In September 2015, Mss. Paulk and Lynch were working on a prenuptial agreement, even though Ms. Paulk said in an email to Ms. Lynch on August 28, 2015 that she was not sure that it was needed "given [she already had] beneficiaries & having a will and separate accounts."

12. On October 4, 2015, Younzetta Paulk and Ms. Lynch married, and agreed that thereafter they would complete a post-nuptial agreement to ensure that both she and Ms. Lynch would retain their respective financial resources that they owned at the time of the marriage, and that individually they might obtain thereafter.

13. On October 23, 2015, Younzetta Paulk executes a Last Will and Testament "revoking all wills and codicils at any time heretofore made by me" and appoints her son Tedric as Executor. **Exhibit B**. In her Will, executed less than 3 weeks after her marriage to Ms. Lynch, and governed by the law of the state of Virginia, then her state of residency and citizenship, Ms. Paulk leaves her "tangible personal property…and all rights that I have under any related insurance policies, in accordance with a written memorandum which I intend to prepare and sign…as permitted by Virginia law." See Paragraph THIRD.

14. The Will goes on to declare in the same paragraph that "In the absence of such memorandum, or to the extent that such memorandum fails to effectively dispose of any such property for any reason…I give such property or the portion not effectively disposed of as hereafter provided with respect to my residuary estate."

15. In Paragraph FOURTH, the decedent gives her residuary estate to Tedric and Makell, and if neither survive her, to her brother. If neither her children or

brother survive her, the Will “give[s] [her] residuary estate to those who would take from me as if I were then to die without a will, unmarried and the absolute owner of my residuary estate, and a resident of the Commonwealth of Virginia.”

16. In paragraph NINE, the decedent notes that “I have served in the Armed Forces of the United States,” and requests that her Executor “make appropriate inquiries to ascertain whether there are any benefits to which I, my dependents or my heirs may be entitled by virtue of any military affiliation.”

17. Ms. Younzetta Paulk’s Last Will and Testament, executed less than 3 weeks after her marriage to Ms. Lynch, completely excludes Ms. Lynch from any consideration, or any mention whatsoever.

18. Ms. Paulk tells Tedric and Makell that she has learned that Ms. Lynch is experiencing financial problems about which she and Ms. Lynch have argued. She is concerned about her finances and intends to execute a postnuptial agreement to protect her assets and ensure that Tedric and Makell will receive the financial resources that she promised them upon her death.

19. Ms. Paulk also tells Tedric and Makell that the only funds that she has left Ms. Lynch are 50% of her civilian account Thrift Savings Plan (“TSP”). The Thrift Savings Plan (TSP) is a retirement savings and investment plan for federal employees and members of the uniformed services. She tells her children that the remaining 50% will go to her brother Wendell Maurice England. She also told them that she made these designations in writing by beneficiary form, and that the amount was approximately $75,000. The Defendants later learn that the amount was $72,178.90.

20. Ms. Paulk now insists that this postnuptial agreement be completed, despite significant pushback from Ms. Lynch, to protect her assets from becoming marital assets, and preserve them for her adult children and only heirs Tedric and Makell.

21. On February 16, 2016, consistent with her pledge to her children and in her last Will and Testament to leave her "tangible personal property…and all rights that I have under any related insurance policies, in accordance with a written memorandum which I intend to prepare and sign…", Mss. Paulk and Lynch executed a Postnuptial Agreement. **Exhibit C.**

22. The Postnuptial Agreement, at page 1, acknowledges that Ms. Paulk and Ms. Lynch "married for mutual joy and to help and comfort each other in prosperity and adversity, without any intent of gaining enrichment by reason of any property and interests, however large they might potentially be, that in the absence of this Agreement might arise by reason of their marriage" [.]

23. Further, the Postnuptial agreement stated, on pages 1-2, that both women "acknowledged to the other that she does not now have and has never had any right, title or interest in or to the property, income, assets or estate of the other by reason of their pre-marital relationship, or otherwise;" and that no change in circumstances, including illness or disability, shall affect the "fairness or mutual consideration given" or the "validity" of this Agreement.

24. The Agreement includes 3 Schedules, attached as addenda and incorporated by reference. Schedule A described the "separate/non-marital property" of Ms. Paulk that she owned and possessed prior to the marriage (also referred to as "Younzetta Paulk - Assets and Income"). Schedule B described the

"separate/non-marital property" of Ms. Lynch that she owned and possessed prior to the marriage (also referred to as "Minda Lynch - Assets and Income"). Schedule C, a much shorter schedule, described the "Jointly Titled Property Subsequently Acquired."

25. Schedule A, which outlined Ms. Paulk's assets and income, includes, among other assets, "Life Insurance Policies" totaling $650,000. See Schedule A of Postnuptial Agreement, at **Exhibit C.**

26. The Postnuptial Agreement and the Will that leaves Ms. Lynch nothing of Ms. Paulk's "separate/nonmaritial" assets or income defeat and are intended to defeat legally Maryland's probate laws that otherwise prevent an individual from disinteresting her spouse.

27. On or about April 2016, Ms. Paulk's doctors take her driver's license because she is on morphine and other drugs due to end stage pancreatic cancer, suggesting that her judgment at this juncture is impaired.

28. On or about May 16, 2016, Ms. Paulk, with agreement of her doctors, is discharged from the hospital to home care given that her doctors state that there is nothing more they can do to cure her cancer.

29. On May 17 or 18, 2016, Ms. Paulk entered hospice home care.

30. On May 19, 2016, MetLife was faxed a "beneficiary designation" dated the same date. Upon information and belief, it was faxed by Ms. Lynch and completed in her handwriting. According to MetLife's pleading at paragraph 10, the document "appears to designate Plaintiff as the sole beneficiary of the life insurance benefits and with what appears to be the Decedent's signature." This policy, according to MetLife, was worth $100,000.

31. Also on May 19, 2016, the TSP was faxed a "Designation of Beneficiary" document purporting to designate Plaintiff Lynch as a beneficiary of 90% of the TSP funds with the remaining 10% designated to her brother Wendell.

32. The witnesses to the designation were Denisse and Alexis, Ms. Lynch's daughters from her previous marriage. Their signatures were dated May 18, 2016, around or about the time that Ms. Paulk went into hospice.

33. The total amount of the TSP funds were $72,178.90. **Exhibit D.** Ms. Lynch's 90% share was $64,961, far more than 50%, or $36,089.45 that Ms. Paulk previously told her children that Ms. Lynch would receive.

34. Instead of her brother Wendell receiving the 50% share that Ms. Paulk told Tedric and Makell he would receive, he only received 10% of the funds equaling $7,217.89, or $28,871.56 less than the stated amount.

35. On June 16, 2016, at 6:30 am, Ms. Paulk died at home while in hospice care.

36. On June 17, 2016, the day after Ms. Paulk's death, Ms. Lynch goes to Ms. Paulk's place of employment and completes paperwork for Ms. Paulk's "separate/nonmarital property" insurance proceeds described on Schedule A of the Postnuptial Agreement. These insurance proceeds are unrelated to the MetLife insurance proceeds.

37. Ms. Lynch received $140,063.20 in Ms. Paulk's "separate/nonmarital property" intended for Tedric and Makell from this Federal Employee Government Life Insurance ("FEGLI") policy alone.

38. Also immediately after Ms. Paulk's death, Ms. Lynch rushed to fill out papers to receive Ms. Paulk's Federal Employee Retirement System ("FERS")

contributions plus interest in the amount of $9,582.41; a Navy Federal IRA account in the amount of $3,495.82; and Ms. Paulk's final month's disability check in the amount of $2,906.83 from the Veteran's Administration.

39. There was no beneficiary designated on any of these policies, and Ms. Lynch obtained these sums even though they should have passed to Ms. Paulk's estate, which is controlled by her son co-Defendant Tedric.

40. For example, when there is no designated beneficiary, FERS requires the surviving spouse to have been married to the deceased employee for at least 9 months to receive death benefits. See https://www.opm.gov/retirement-services/fers-information/survivors/. The marriage between Mss. Paulk and Lynch lasted 18 days shy of 9 months (October 4, 2015 to June 16, 2016).

41. Upon information and belief, FEGLI also requires the surviving spouse to have been married to the deceased employee for at least 9 months in order to receive death benefits.

42. Sometimes thereafter, around June 30, 2016, MetLife received a claim for benefits from Ms. Lynch for the $100,000 MetLife proceeds.

43. Upon information and belief, Ms. Lynch submitted paperwork for additional insurance proceeds from Ms. Paulk's "separate/nonmarital property" noted in Schedule A of the Postnuptial Agreement that was intended for Tedric and Makell.

44. Tedric, both individually and in his capacity as Executor of the estate of Younzetta Paulk, and Makell, have been unable to locate any of the insurance proceeds totaling $650,000 described in Schedule A of the Postnuptial Agreement since their mother's death, excepting and less the $100,000 proceeds

from the MetLife policy, and the $140,063.20 in FEGLI proceeds that Ms. Lynch already has received.

45. Upon information and belief, Ms. Lynch has used all of the insurance proceeds and other amounts recently to retire to Florida.

**CAUSE OF ACTION**

**UNDUE INFLUENCE, FRAUD AND UNJUST ENRICHMENT**

46. The Paulks and the estate incorporate by reference all previous paragraphs as if fully restated herein.

47. Ms. Lynch occupied a confidential relationship with Younzetta Paulk in that they were married approximately only 8 months before Ms. Paulk's death, and 2 months after Ms. Paulk received a diagnosis of terminal pancreatic cancer. Further, Ms. Lynch was intimately involved as co-health care decision maker with Ms. Paulk and had taken control of her financial affairs.

48. Ms. Paulk was susceptible to undue influence and duress by Ms. Lynch, given that she had become totally dependent upon Ms. Lynch particularly during her end stage terminal illness. She increasingly was dependent on pain medication during this period, which in turn made her more dependent upon Ms. Lynch and susceptible to Ms. Lynch's undue influence.

49. There was substantial benefit to be obtained by Ms. Lynch if she was illegally to change the beneficiaries of Ms. Paulk's MetLife insurance proceeds and other various insurance policies from the Defendants and other family members to herself. The MetLife policy alone is worth $100,000, and MetLife has paid this amount into the Court's Registry for payment to the appropriate beneficiary.

50. Further, there was substantial benefit for her to change illegally the beneficiary designation to increase her share of Ms. Paulk's TSP funds from a 50% share of $36,089.45 to a 90% share of $64,961, far more than that Ms. Paulk previously told her children that Ms. Lynch would receive.

51. Ms. Lynch, in changing the beneficiary amounts and coercing Ms. Paulk to sign these changes, cheated Ms. Paulk's brother Wendell out of $28,871.56. Again, she already has been unjustly enriched with this amount.

52. Because Tedric is the executor of Ms. Paulk's estate, it is his responsibility to ensure that Ms. Paulk's testamentary dispositions, whether in probate or out of it, are met and that her heirs and beneficiaries are not defrauded due to undue influences and fraud.

53. Ms. Lynch filled out a "beneficiary designation" on Ms. Paulk's behalf, and coerced the signature of Ms. Paulk. She then faxed the form to MetLife approximately 27 days prior to Ms. Paulk's death. Further, she also did the same thing with respect to the TSP fund on the same date.

54. There was significant opportunity for Ms. Lynch to exert influence over Ms. Paulk. Ms. Lynch was intimately involved as co-health care decision maker with Ms. Paulk in the health matters of Ms. Paulk once she was diagnosed with terminal cancer. Thereafter, Ms. Lynch assumed control over Ms. Paulk's financial affairs.

55. There was an "unnatural" disposition in Ms. Lynch receiving Ms. Paulk's MetLife insurance, and other insurance proceeds, when 3 months prior Mss. Paulk and Lynch executed a Postnuptial Agreement that described Ms. Paulk's insurance policies worth $650,000 as "separate/nonmarital property", and

specifically excluded Ms. Lynch from any role as beneficiary or recipient of the proceeds. Ms. Paulk also intentionally excluded her from her Will that was executed 3 weeks after the marriage.

56. Ms. Lynch's contention that she is the designated beneficiary of the MetLife, TSP funds and other insurance policies is contrary to and a change in beneficiaries given that, with respect to the MetLife insurance policy, Ms. Paulk previously had named her children Tedric and Makell as MetLife beneficiaries in a designation made in 2013. Further, regarding the other insurance policies on Schedule A of the Postnuptial Agreement, Ms. Lynch also was excluded from ownership or beneficiary designation.

57. Defendants contend that Ms. Lynch engaged in undue influence, and forced Ms. Paulk to change beneficiaries on the $100,000 MetLife policy from her adult children and to Ms. Lynch. Ms. Lynch's action, therefore, amount to coercion sufficient to force Ms. Paulk to follow Ms. Lynch's judgment, and it rose to a level where Ms. Paulk's free will was destroyed. It also amounts to fraud. Defendants make the same allegation with respect to the TSP funds, with such fraud amounting to $28,871.56.

58. As a direct and proximate result of Ms. Lynch exerting undue influence on Ms. Paulk at a time when she enjoyed a confidential relationship with Ms. Paulk, the Paulks and the estate of Younzetta Paulk have been deprived of assets which rightfully belong to them, including the MetLife insurance proceeds, and other insurance policies as described in the Postnuptial Agreement.

59. The Paulks and the estate believe and therefore aver that Ms. Lynch also caused other assets of Ms. Paulk to be transferred to her in violation of this

confidential relationship with Ms. Paulk.

60. In addition to the MetLife proceeds amount of $100,000, Ms. Paulk's estate is entitled to $156,048.26 in insurance proceeds and payments from other accounts and sources for which there was no designated beneficiary. Ms. Lynch obtained these sums that legally should have passed through Ms. Paulk's estate. Ms. Lynch was unjustly enriched in this amount because she was not entitled to these sums.

61. The total of $156,048.26 is broken down as follows: Ms. Paulk's FEGLI proceeds in the amount of $140,063.20; Ms. Paulk's FERS contributions plus interest in the amount of $9,582.41; a Navy Federal IRA account in the amount of $3,495.82); and final month's disability check in the amount of $2,906.83 from the VA.

62. All of the above amounts to which the Defendants are entitled have disappeared during the confidential relationship between Ms. Paulk and Ms. Lynch. The Defendants contend that Ms. Lynch coerced Ms. Paulk to sign beneficiary forms to obtain these funds for herself, and was unjustly enriched by amounts due and owed to Tedric as the executor of his mother's estate.

63. The proceeds already obtained by Ms. Lynch through such coercion amount to unjust enrichment and must be disgorged by her in favor of the Paulks and the estate.

64. The actions of Ms. Lynch in taking these assets (and any other assets she caused to be converted to her possession as may be discovered in the course of this action) were deliberate, knowing and unjust.

65. The actions of Ms. Lynch in breaching her confidential relationship and

causing Ms. Paulk's assets to be transferred to her were taken in bad faith and with actual malice, intending to deprive the Defendants of their rightful assets.

WHEREFORE, the Paulks and the estate of Younzetta Paulk pray a judgment against Ms. Lynch in excess of $256,048.26 plus interest at the legal rate from June 16, 2016 (pre and post-judgment interest) plus costs and reasonable counsel fees.

**TRIAL BY JURY**

Makell Paulk, and Tedric Paulk, individually, and as Executor of the estate of Younzetta Paulk, ask for a trial by jury on all counts.

February 2, 2016

Respectfully submitted,

Makell Paulk and Tedric Paulk, individually
Tedric Paulk, Executor, Estate of Younzetta Paulk

By: /s/GEORGE L. GARROW, JR., ESQ.
George L. Garrow, Jr., Esq. Bar #11610
The Garrow Law Firm, PLLC
300 New Jersey Avenue, NW, Suite 900
Washington, DC 20001
202-469-3411 phone
202-280-1120 fax
ggarrow@me.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by the ECF system, on February 2, 2017, to the following addresses:

Mitchell I. Alkon, Esq.
Alkon Law LLC
6110 Executive Blvd., Suite 300
Rockville, MD 20852
malkon@alkonlawfirm.com
*Attorney for Plaintiff Minda R. Lynch*

/s/GEORGE L. GARROW, JR., ESQ.
George L. Garrow, Jr., Esq.